UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JACOB C. BRIER,

    Plaintiff,

    v.   CAUSE NO. 3:25-CV-320-HAB-SLC

CENTURION HEALTH OF INDIANA, et al.,

    Defendants.

OPINION AND ORDER

Jacob C. Brier, a prisoner without a lawyer, filed a complaint and request for preliminary injunction due to allegedly inadequate medical treatment for back pain related to scoliosis. ECF 1; ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Brier alleges that he suffers from scoliosis and has had seventeen surgeries to address his condition. He has several Harrington rods[1] in his back and has used various back braces. He has also been prescribed powerful pain medication in the past.

In February 2024, Brier was transferred to Westville Control Unit (WCU). After his arrival, he began having severe pain in his back and neck, and severe headaches. In the fourteen months he has been at WCU, he has submitted over twenty health care request forms. He alleges that most were ignored. He is suing thirteen separate defendants: Dr. Andrew Liaw, Nurse Dawn Schilling, Nurse Ms. Bryan, Nurse Ms. Jenkins, Nurse Katie Jacobs, Nurse Ms. Hudson, Nurse Ms. Ruse, WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, Correctional Captain Mr. Rippe, Warden Jason Smiley, Centurion Health of Indiana, and the Indiana Department of Correction.

*Brier's Allegations Against Dr. Liaw*

Brier saw Dr. Liaw on two occasions since being transferred to WCU.[2] At the first visit, Briar explained his pain and Dr. Liaw said, "I can't really do anything for you." ECF 1 at 4. Brier asked for a back brace and pain medication. Dr. Liaw said "I can't give you a back brace[.] Our policy at Centurion says we can't order back braces for inmates in segregation and IDOC policy says the same thing. No back braces of any kind." *Id.* Brier

---

[1] "The Harrington rod (or Harrington implant) is a stainless steel surgical device. Historically, this rod was implanted along the spinal column to treat, among other conditions, a lateral or coronal-plane curvature of the spine, or scoliosis." https://en.wikipedia.org/wiki/Harrington_rod#:~:text=it%20was%20invented.-,Description,until%20vertebral%20fusion%20had%20occurred. (footnote omitted) (last viewed Apr. 21, 2025).

[2] Brier does not provide the dates of his appointments with Dr. Liaw.

2

asked why, and Dr. Liaw speculated that the policy was based on safety concerns, such as making weapons. Briar takes issue with this, because inmates in segregation have access to other items that could be used to make weapons. Briar inquired about a back brace that uses Velcro. Dr. Liaw said "your [sic] not getting a back brace period." *Id.* Briar asked about medication for pain, and Dr. Liaw said, "The medication we are allowed to give you won't work[.] [Y]ou have a very serious condition that requires narcotics which your [sic] definitely not getting[.] [Y]ou need to start restricting your movements[.] [N]o working out[.] [T]ry soft stretches." *Id.* No further advice or treatment was offered.

After this appointment, Brier asserts that he began having mobility issues. He would wake up and could not feel or control his left leg. By the time Brier saw Dr. Liaw a second time, he could barely walk. Dr. Liaw told Brier he did not know what he expected of him, because he would not give him a back brace and "it was pointless to give [him] pain medication for the level of pain [he] was feeling." *Id.* at 4-5. Brier asked to be referred to a doctor who could help or sent to the hospital. Dr. Liaw responded with "[O]kay[,] you know what[,] I'm not going to argue with you[.] [J]ust get out." *Id.* at 5. Brier now reports that the pain is sometimes so severe that he blacks out. *Id.* at 11.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious

3

that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). While additional fact finding may show otherwise, giving Brier the benefit of all inferences, as the court must at this early stage, he has stated an Eighth Amendment claim against Dr. Liaw.

Brier is also suing Dr. Liaw for intentional infliction of emotional distress (IIED). Under Indiana law, a claim for intentional infliction of emotional distress requires that a plaintiff allege "the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Haegert v. McMullan*, 953 N.E.2d 1223, 1235 (Ind. Ct. App. 2011) (quotation marks omitted). Indiana courts cite approvingly this comment from the Restatement (Second) of Torts:

4

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996) (quoting *Restatement (Second) of Torts § 46 at 72–73*)).

Dr. Liaw's actions may violate the Eighth Amendment, but the facts alleged in the complaint – denying Brier a back brace, narcotics, and referral to another medical provider – do not approach outrageous, extreme, atrocious, or intolerable. This is especially so where Dr. Liaw's actions were consistent with Centurion Health of Indiana and IDOC policies. Therefore, he may not proceed against Dr. Liaw on an IIED claim.

*Brier's Allegations against the Nurses*

Brier is also suing the multiple nurses he complained to about his pain daily: Nurse Dawn Schilling, Nurse Ms. Bryan, Nurse Ms. Jenkins, Nurse Katie Jacobs, Nurse Ms. Hudson, and Nurse Ms. Ruse. He described his symptoms and Dr. Liaw's response. And he asked them to contact the other doctor or the medical director for help. Brier alleges that these nurses have seen his suffering, including his inability to get out of bed in the morning. These same nurses were responsible for conducting sick call, so he saw at least some of them in that context too. They claimed there was nothing they could do because

of the policies in place regarding inmates in restrictive housing. In other words, the nurses deferred to the medical judgment of the physician that treated Brier.

These allegations, without more, do not permit a plausible inference that the nurses Brier interacted with were deliberately indifferent to his suffering. At most, these allegations suggest negligence. Negligence generally states no claim upon which relief can be granted in a § 1983 action. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Negligence or medical malpractice do not constitute deliberate indifference).

Additionally, Brier is suing Nurse Jacobs for retaliating against him for suing her and her friend. Brier alleges that Ms. Jacobs made the following comment: "[M]otherfucker you sued me and my friend and she can't work here anymore[.] I'm going to personally make sure you don't get shit from the doctor or the C.O.'s[.] [F]uck you[.]" ECF 1 at 7. She also told Brier that, if his health care requests come across her desk, she will throw them away. When Ms. Jacobs passes out medication, she tells other inmates that Brier "snitched on her in a lawsuit." *Id.* This resulted in verbal abuse.

"To prevail on his First Amendment retaliation claim, [Brier] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendant['s] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted).

6

Here, Brier has alleged that he filed a lawsuit against Nurse Jacobs and her friend, and Nurse Jacobs threatened to destroy requests for medical care and otherwise prevent him from obtaining medical care because he filed that lawsuit. She has also made him the subject of abuse by labeling him a snitch. "[I]t's common knowledge that snitches face unique risks in prison . . . ." *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008). These allegations are sufficient to state a claim for retaliation against Nurse Jacobs.

Brier has also sued Nurse Jacobs for IIED. The allegations against Nurse Jacobs, if substantiated by the evidence, are troubling. Both the threats to withhold all future medical care, no matter how serious his condition, and the decision to label him as a "snitch" for filing a lawsuit seem designed to terrorize Brier. While it is unclear they are so outrageous that they meet the standard required for IIED, at the screening stage, the court will allow this claim to proceed.

*Brier's Allegations Against WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, and Correctional Captain Mr. Rippe*

Brier talked with WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, and Correctional Captain Mr. Rippe about getting an extra mattress or blankets to help alleviate his pain. He asked them to contact Warden Jason Smiley or the medical director because his health care requests were not being addressed. The officers confirmed with medical personnel that Brier had scoliosis and Harrington rods in his back, but they still said they could not provide him with extra bedding due to IDOC policy. They directed him to go through medical, even though they knew he had already tried that.

7

Non-medical staff rely on medical experts and are "entitled to relegate to the prison's medical staff the provision of good medical care." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). Here, no medical provider determined that Brier needed additional bedding to address his medical issues. It cannot be plausibly inferred from the facts alleged in the complaint that WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, or Correctional Captain Mr. Rippe were deliberately indifferent to Brier's medical needs.

Brier is also suing WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, or Correctional Captain Mr. Rippe for retaliation. These individuals were either named in a lawsuit Brier filed regarding inadequate mental health care[3] or in grievances. He alleges that, after he filed the lawsuit and grievances, they became hostile toward him. Complex Manager Cornett stopped by one day and allegedly said, "Now your [sic] really not getting anything and I really was thinking about giving you a mattress for your back[.] [Y]ou screwed that up and lets [sic] see how long it takes for your paperwork to go through once your segregation time is up[.] [Y]ou will stay here for another year before your release[.] I promise you that." ECF 1 at 9. Mr. Rippe called Brier a "big wuss" and told the pod that Brier snitched on him in a lawsuit. Mr. Cornett told the inmates that, if they didn't "let [Brier] have it," their cells would be shaken down for a week straight. He also told the officers that were present "to make sure [his] food trays had enough seasoning on them." *Id.* at 9-10. Brier understood this as a directive to tamper with his

---

[3] *Brier v. Smiley*, 3:24-CV-1006-GSL-JEM (filed Dec. 26, 2024).

food in some way. Since then, Brier has been harassed verbally non-stop by both guards and inmates.

Brier may proceed against WCU Complex Manager Tracy Cornett for retaliating against him both by denying him a mat and threatening to keep in him in restricted housing beyond the date which he should be released. He may also proceed on a retaliation claim against Captain Mr. Rippe for labeling him a snitch. And, he may proceed against Correctional Captain Mr. Cornett for retaliating against him by threatening other inmates with daily shakedowns if they did not "let [him] have it." ECF 1 at 9. Additionally, he may proceed against Correctional Major Mr. Cornett for retaliating against him by encouraging other officers to mess with Brier's food in some unspecified way.

*Brier's Allegations Against Centurion Health of Indiana*

Brier is suing Centurion Health of Indiana for having a policy of prohibiting inmates with back injuries from using back braces when in segregation. Brier asserts that this is unjust because there are back braces with Velcro that do not pose safety concerns, and because items that pose greater safety concerns than a back brace are permitted.

A private company performing a public function can be held liable if its own policies caused an alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Giving Brier the benefit of all reasonable inferences, he has alleged

9

facts from which it can be plausibly inferred that Centurion Health of Indiana had a policy of denying all back braces to inmates in restrictive housing, including those using Velcro, without considering the nature of the medical need and without a legitimate reason. Therefore, he may proceed against Centurion Health of Indiana, LLC.

*ADA and Rehabilitation Act Claims*

Brier also alleges that Dr. Liaw, Centurion Health of Indiana, and the IDOC violated the Americans with Disabilities Act (ADA), 42 U.S.C §§ 12131–12134, and section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Title II of the ADA provides that qualified individuals with disabilities may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Prisons and correctional facilities are public entities within the purview of Title II. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). Officials can be sued under the ADA for declaratory and injunctive relief. *Radaszweski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004). Where an inmate seeks monetary damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C`. § 701, given the uncertainty about the availability of damages under Title II and because the relief available is "coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). Under the Rehabilitation Act, damages are available against a state that accepts federal assistance for prison operations, as all states do. *Id.* To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his

10

disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). "Refusing to make reasonable accommodations is tantamount to denying access[.]" *Jaros*, 684 F.3d at 672 (citation omitted). Additionally, a plaintiff can establish intentional discrimination through a showing of deliberate indifference. *Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). In other words, discrimination occurs when the defendant knows that a violation of these rights is "substantially likely" yet fails to act. *Id.* (citation omitted).

A claim under either the ADA or Rehabilitation Act cannot be brought against individual employees. Any claim under these statutes is a claim against the state agency itself. *See Jaros*, 684 F.3d at 670. Therefore, Brier may not proceed against Dr. Liaw or Centurion Health of Indiana, LLC, on a claim pursuant to the ADA or Rehabilitation Act.

As to the IDOC, Brier cannot proceed because he was not denied medical care, including a back brace or mat, *because of his disability*. He was denied medical care because Dr. Liaw determined that it either was not warranted or would have violated policies in place for inmates in restrictive housing. Brier has not pled facts from which it can be plausibly inferred that any denial at issue in this case *was because of his disability*. He is simply unhappy with his medical care, and that does not, standing alone, implicate the ADA or Rehabilitation Act.

*Request for Preliminary and Permanent Injunction*

Brier also seeks a preliminary and permanent injunction to obtain help with his back pain.[4] ECF 1 at 11. *Id.* at 11. Because Brier has alleged facts from which it can be

---

[4] In the alternative, Brier asks for the court to authorize a "'state assisted suicide' for [him] because [he] can't take the pain anymore." ECF 11.

11

plausibly inferred that there is an ongoing violation of his Eighth Amendment right to constitutionally adequate medical care, he will be permitted to proceed against Warden Smiley in his official capacity for permanent injunctive relief to receive adequate medical care, consistent with the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As to the first prong, "the applicant need not show that it definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id*. at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. at 763 (quotation marks omitted).

As to the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. "Mandatory preliminary injunctions – those requiring

an affirmative act by the defendant – are ordinarily cautiously viewed and sparingly issued [because] review of a preliminary injunction is even more searching when the injunction is mandatory rather than prohibitory in nature. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020) (quotation marks omitted).

Brier is entitled only to adequate medical care as required by the Constitution. It is unclear if Brier is receiving adequate medical care, but to the extent he is not, there may be multiple methods of providing constitutionally adequate care to Brier. He cannot dictate how it is provided.[5]

> [t]he PLRA circumscribes the scope of the court's authority to enter an injunction in the corrections context. Where prison conditions are found to violate federal rights, remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right. This section of the PLRA enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: Prison officials have broad administrative and discretionary authority over the institutions they manage.

*Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation marks, brackets, and citations omitted). Therefore, injunctive relief – if granted – would be limited to requiring that Brier be provided with constitutionally adequate medical care for his condition, as required by the Eighth Amendment. Brier's motion for preliminary injunctive relief will be taken under advisement. The Warden will be required to respond to the motion, and Brier will have an opportunity to file a reply.[6]

---

[5] State assisted suicide is not one of the options this court will consider.

[6] Brier also asks that a trial on the merits be consolidated with a hearing on his motion for preliminary injunction, consistent with Federal Rule of Civil Procedure 65(a)(2). This court has not yet determined whether a hearing is necessary, but even if it is, Brier has many claims against many

13

For these reasons, the court:

(1) GRANTS Jacob C. Brier leave to proceed against Warden Smiley in his official capacity for permanent injunctive relief to receive constitutionally adequate medical treatment for scoliosis and associated pain, as required by the Eighth Amendment;

(2) GRANTS Jacob C. Brier leave to proceed against Dr. Liaw in his individual capacity for monetary damages for deliberate indifference to his medical needs stemming from scoliosis and associated pain, by denying Brier both a back brace, pain medication, or a referral to an outside medical provider who could offer other solutions to Brier's pain, in violation of the Eighth Amendment;

(3) GRANTS Jacob C. Brier leave to proceed against Nurse Katie Jacobs in her individual capacity for monetary damages for retaliating against Brier by threatening to deny him all access to medical care and destroy future requests for medical care, and by labeling him as a snitch, in violation of the First Amendment;

(4) GRANTS Jacob C. Brier leave to proceed against Nurse Katie Jacobs in her individual capacity for monetary damages for intentional infliction of emotional distress, by making comments designed to terrorize him by threatening to withhold access to medical care and labeling him a snitch, in violation of Indiana law;

(5) GRANTS Jacob C. Brier leave to proceed against WCU Complex Manager Tracy Cornett in her individual capacity for monetary damages for retaliating against him by withholding an extra mat and threatening to keep in him in restricted housing beyond

---

defendants, and a trial on the merits would be premature in the absence of a full and fair opportunity for both parties to conduct discovery.

the date on which he would have otherwise been released from restrictive housing, in violation of the First Amendment;

(6) GRANTS Jacob C. Brier leave to proceed against Correctional Captain Mr. Rippe in his individual capacity for monetary damages for labeling Brier a snitch in front of other inmates, in violation of the First Amendment;

(7) GRANTS Jacob C. Brier leave to proceed against Correctional Major Mr. Cornett in her individual capacity for monetary damages for retaliating against him by threatening other inmates with daily shakedowns if they did not "let [Brier] have it," and encouraging other officers to mess with Brier's food in some unspecified way in violation of the First Amendment;

(8) GRANTS Jacob C. Brier leave to proceed against Centurion Health of Indiana, LLC, for monetary damages for having a policy of denying all back braces to inmates in restrictive housing, including those using Velcro, without considering the nature of the medical need and without a legitimate reason, resulting in a violation of Brier's right to constitutionally adequate medical care under the Eighth Amendment;

(9) DISMISSES all other claims;

(10) DISMISSES Nurse Dawn Schilling, Nurse Ms. Bryan, Nurse Ms. Jenkins, Nurse Ms. Hudson, and Nurse Ms. Reese, and the Indiana Department of Correction;

(11) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Smiley, WCU Complex Manager Tracy Cornett,

Correctional Major Mr. Cornett, and Correctional Captain Mr. Rippe at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(12) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Liaw, Nurse Katie Jacobs, and Centurion Health of Indiana, at Centurion Health of Indiana, LLC, with a copy of this order and the complaint (ECF 1);

(13) TAKES UNDER ADVISEMENT Jacob C. Brier's Motion for Preliminary Injunction (ECF 3);

(14) DIRECTS the Clerk to fax or email a copy of this order, the complaint (ECF 1) and Motion for Preliminary Injunction (ECF 3) to Warden Smiley of the Westville Correctional Facility;

(15) ORDERS Warden Smiley of the Westville Correctional Facility to respond to the request for preliminary injunction and file an affidavit or declaration with the court (with supporting documentation and declarations from other staff as necessary), explaining how Jacob C. Brier's serious medical needs related to scoliosis and associated pain are being treated in a manner that comports with the Eighth Amendment's requirements by **May 19, 2025**;

(16) GRANTS Jacob C. Brier until **June 16, 2025**, to file a reply to the Warden's response;

(17) ORDERS the Indiana Department of Correction and Centurion Health of Indiana, LLC, to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(18) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Smiley, Dr. Liaw, Nurse Katie Jacobs, WCU Complex Manager Tracy Cornett, Correctional Major Mr. Cornett, Correctional Captain Mr. Rippe, and Centurion Health of Indiana to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 23, 2025.

s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT